This case concerns a suit originally brought by Jacqueline Strong, individually and as executrix under the will of Jacqueline Jordan, deceased, to set aside certain transactions occurring during the lifetime of the decedent. The jury rendered a verdict against Jacqueline Strong on all issues except a $75,000 promissory note, and the propriety of the judgment on the note, along with the taxing of costs, are the issues on appeal.
Jacqueline Jordan died testate on October 4, 1981. Jacqueline Strong was her only daughter. The appellants are Barbara Edwards, a sister of the decedent, and the Jordan Machine Shop, Inc. (Jordan Machine), a company which at one time was owned by the decedent, but which, about four years prior to decedent's death, had been sold to Jerry Edwards, Barbara Edwards's husband.
At issue here is a $75,000 promissory note dated July 10, 1981, executed by Jordan Machine and payable to the order of Jacqueline Jordan or Barbara Edwards as co-payee with right of survivorship. Decedent loaned $75,000 to Jordan Machine so that the company could build a new building. The note was signed by Jerry Edwards, on behalf of the corporation. Barbara Edwards typed the note. Only Barbara Edwards, Jerry Edwards, and the decedent were present when the note was signed and delivered. The trial court found that Barbara Edwards had exercised undue influence upon her sister, the decedent, in procuring her own name on the note as co-payee, with right of survivorship. In addition, the trial court taxed one-half of the costs of the action against Jacqueline Strong and one-half of the costs against Jordan Machine.
Barbara Edwards and Jordan Machine contend that there was insufficient evidence of undue influence in the execution of the note and, thus, that the trial court erroneously reformed the note by deleting the clause which gave her a right of survivorship. Both argue that evidence of undue influence must be more than a suspicion or speculation that undue influence is present. Jackson v. Davis, 398 So.2d 242, 245 (Ala. 1981). Of course, this is the law, but the question remains whether sufficient evidence was presented here to support the trial court's decree.
The general rule is that a presumption of undue influence arises when the contestant shows that (1) the grantor and grantee are in a confidential relationship; (2) the grantee is the dominant party in the relationship; and (3) the grantee *Page 370 
engaged in undue activity in the procurement of the inter vivos gift or execution of the will. Sanford v. Coleman,418 So.2d 856 (Ala. 1982); Nottage v. Jones, 388 So.2d 923 (Ala. 1980). This doctrine applies equally to both testamentary and inter vivos gifts. Gosa v. Willis, 341 So.2d 699 (Ala. 1977). Once this presumption arises, the burden shifts to the grantee, in this case, Barbara Edwards, to rebut the presumption by showing that the grantor obtained independent advice or by showing by some other means that "the matter was a voluntary and well understood act of the grantor's mind and was fair and just."Hinson v. Byrd, 259 Ala. 459, 66 So.2d 736 (1953).
Here, there was evidence from which the court could conclude that Barbara Edwards and the decedent had a confidential relationship. On voir dire, Barbara Edwards testified that she and the decedent had a joint safe deposit box for over twenty years and that she handled everything for the decedent. Barbara Edwards stated the following:
 "A I would say that I went into the box ninety percent of the time and the whole record may show that she [the decedent] went in only ten percent. I handled everything and she did not go in the box very often."
In addition, the decedent and the grantee had a joint savings account. Furthermore, the following testimony indicates that Barbara Edwards frequently used the decedent's charge accounts, signing the decedent's name:
 "Q Did you on occasions, Mrs. Edwards, go down and charge things and buy things for yourself and charge them to your sister?
"A When she told me to.
 "Q Did you ever go down and buy something and charge it to your sister, that's the question?
"A When she told me to, yes, sir.
"Q Yes, that's right?
"A When she told me to.
"Q Sign her name?
"A I sure did.
"Q On her charge account?
"A I did.
"Q How many occasions have you done that on?
"A I could not even begin to tell you.
"Q Numerous, right?
"A Right."
The second element required to raise a presumption of undue influence requires a showing that Barbara Edwards dominated the will of the decedent. The decedent's nurse testified regarding the relationship between the decedent and Barbara Edwards as follows:
 "Q Did you ever see any indication that Mrs. Jordan was afraid of Barbara Edwards?
 "A She did not like to be reprimanded by Barbara at all.
"Q Did Barbara reprimand her?
"A At times, yes, sir.
"Q Did she seem eager to please her?
"A Yes."
Jacqueline Strong testified that Barbara Edwards dominated the decedent because she had, through her constant presence, made the decedent totally dependent on her and testified that the decedent was afraid of losing Barbara Edwards.
Finally, there is credible evidence to support the last element, that of undue activity. Barbara Edwards testified that she typed the note and that only she, Jerry Edwards, and the decedent were present when the note was executed.
It is unclear from the record whether the trial court's judgment, relating to the invalidity of the note, is solely a result of the jury's verdict or whether it is a result of the court's independent judgment based in part upon the advisory verdict of the jury. In the record, the court commented on at least two occasions that it deemed the issue of the note to be one in which the jury's verdict would be only advisory. The appellee contends, however, that upon either basis, whether based upon the court's findings or upon the jury's verdict, the judgment carries with it a presumption of validity. We agree. *Page 371 
It is well established in this jurisdiction that the verdict of a jury is presumed to be correct and will not be set aside on appeal unless it is plainly erroneous, manifestly unjust, or against the preponderance of the evidence. TG Y Stores v.Atchley, 414 So.2d 912 (Ala. 1982). In addition, findings and conclusions of a trial court on evidence produced ore tenus are afforded the same weight as a jury verdict. Cauley v. Sanders,388 So.2d 891 (Ala. 1980); Universal Development Corp. v.Shader, 382 So.2d 1115 (Ala. 1980). The trial court's findings will not be disturbed if they are fairly supported by credible evidence. Lavett v. Lavett, 414 So.2d 907 (Ala. 1982). These principles are equally applicable in both law and equity and have been specifically held to be applicable to cases involving undue influence. Wyatt v. Riley, 292 Ala. 277, 293 So.2d 288
(1974); Killough v. Devaney, 374 So.2d 287 (Ala. 1979).
After reviewing the evidence, we cannot conclude that the lower court's finding of undue influence is plainly erroneous, manifestly unjust, or against the preponderance of the evidence. We affirm the lower court's ruling on this issue.
Also at issue here is the taxing of costs. Pursuant to Rule 54 (d), Ala.R.Civ.P., the lower court has discretion in taxing costs. This rule provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Having reviewed the record, we cannot find that the lower court abused its discretion in taxing one-half of the costs to Jordan Machine.
The costs in this case, amounting to $5,842.50, include the fees of two guardians ad litem plus normal expenses. Jordan Machine contends that the taxing of one-half of the costs was an abuse of discretion because of the size of the costs and because there was very little recovery against, or interest on the part of Jordan Machine. They contend that the final judgment against Jordan Machine amounted to only $4,000 and involved two minor issues. Jacqueline Strong, on the other hand, contends that the final judgment against Jordan Machine amounts to a total sum of $40,306.90.
Both parties agree that an adverse judgment was rendered against the corporation for $1,000, due decedent under a noncompetition agreement, and for $3,000, due decedent for one month's salary.
The court also rendered a judgment against Jordan Machine on the promissory note. The court stated:
 "Judgment is hereby rendered for the Plaintiff and against the Defendants, Jordan Machine Company, Inc. for amount past due on the note in the total sum of $36,306.90 being comprised of $21,000.00 principal due plus $15,306.90 interest due."
We find, therefore, that the total judgment rendered against Jordan Machine amounts to $40,306.90; thus, we cannot find the trial court abused its discretion by taxing Jordan Machine with one-half of the costs, which amounts to approximately $2,921.25. We affirm.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.